[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12541
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00118-TCB-JKL-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THADDEUS UGHA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 4, 2019)

Before MARCUS, MARTIN and NEWSOM, Circuit Judges.

PER CURIAM:

Thaddeus Ugha appeals his convictions for conspiracy to commit bank fraud,

in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18 U.S.C. §§ 1344 and

2; and making false statements to a federally insured institution, in violation of 18 U.S.C. §§ 1014 and 2.  On appeal, Ugha argues that: (1) the district court erred in giving a jury instruction on deliberate ignorance and that any error was not harmless; and (2) the district court erred by refusing to grant a mistrial when the government introduced character evidence about him through cross-examination of a defense character witness.  After careful review, we affirm.

We review a challenge to a deliberate ignorance instruction de novo.  United States v. Stone, 9 F.3d 934, 937 (11th Cir. 1993).  Generally, we review for abuse of discretion a district court's denial of a mistrial.  United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007).  However, we review for plain error if a defendant did not make a timely objection.  See United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007).  To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.  Id. at 1276.  If he satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

First, we are unpersuaded by Ugha's claim that the district court erred in giving a jury instruction on deliberate ignorance.  A deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent

2

prosecution.  United States v. Garcia-Bercovich, 582 F.3d 1234, 1237 (11th Cir. 2009).  The standard is the same whether the evidence is direct or circumstantial. United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993).  A district court should not give a deliberate ignorance instruction when there is relevant evidence of only actual knowledge, rather than deliberate avoidance.  United States v. Steed, 548 F.3d 961, 977 (11th Cir. 2008).  In cautioning against overuse of the deliberate ignorance instruction, we've noted the danger that juries will convict on a basis akin to a negligence standard -- that the defendant should have known that the conduct was illegal.  United States v. Rivera, 944 F.2d 1563, 1570 (11th Cir. 1991).

Nevertheless, the district court has broad discretion to formulate its jury charge as long as the charge as a whole accurately reflects the law and the facts. United States v. Williams, 526 F.3d 1312, 1320 (11th Cir. 2008).  We will not reverse convictions on the basis of a jury charge unless the issues of law were presented inaccurately or the charge improperly guided the jury in such a substantial way as to violate due process.  Id. at 1320-21.  Further, any error in giving a deliberate ignorance instruction is harmless if the jury was properly instructed that finding deliberate ignorance requires proof beyond a reasonable doubt, the jury was also instructed on the theory of actual knowledge, and there was sufficient evidence to support that theory.  Stone, 9 F.3d at 937-38; see also Steed, 548 F.3d at 977.

Here, Ugha's trial involved an alleged real estate fraud scheme, in which a series of properties were bought for low prices, sold for much higher prices in a short amount of time, and then foreclosed on. At trial, an FBI special agent testified about ten properties, each of which had two suspicious sales -- where the property sold for one amount and shortly thereafter sold again for a much higher amount -- and in all those transactions, Ugha was the real estate agent for either the buyer or seller (or both), and in some instances the buyer or seller listed him or his company as their employer. The special agent also testified that Ugha had denied knowledge of the fraud and had claimed that he did not know the buyers, but had admitted that he knew he had a problem with some of the sales prices involved in deals with his alleged coconspirator because the prices were too high.

The record reveals that the district court properly instructed the jury on deliberate ignorance. The district court instructed that "you may find that a defendant knew about the fraudulent scheme in the indictment if you determine beyond a reasonable doubt that the defendant, one, actually knew about the fraudulent scheme, or two, had every reason to know but deliberately closed his eyes." The court added that negligence, carelessness, or foolishness was not enough to prove that Ugha knew about the fraudulent scheme. Based on our case law, this was the proper legal standard for the jury to apply. See Stone, 9 F.3d at 937, 941.

4

As for Ugha's reliance on United States v. Perez-Tosta, 36 F.3d 1552 (11th Cir. 1994), that case is distinguishable. In Perez-Tosta, a panel of this Court held that a deliberate ignorance instruction was improper where there was evidence of actual knowledge -- but not of deliberate ignorance -- because the defendant had driven a vehicle containing cocaine to a house and had been present while over 70 kilograms of cocaine was unloaded to a bedroom. Id. at 1555, 1564-65. The Court concluded that because the defendant had been present during "such a large movement of cocaine," he had actual knowledge of the cocaine, and that no evidence suggested that the defendant had "strongly suspected cocaine but purposely contrived not to learn about it." Id. at 1565 (quotations omitted). Nevertheless, the Court affirmed the defendant's conviction, holding that the error was harmless because "[t]he jury could easily have based its verdict on a finding of actual knowledge." Id.

In Ugha's case, by contrast, there was evidence presented to support a finding of deliberate ignorance -- including the testimony that Ugha denied knowledge of fraud or the buyers but knew that some deals with his coconspirator were questionable because the sales prices were too high. Thus, if the jury found that Ugha should have investigated those deals further, but didn't because it was beneficial to him, the jury could have found deliberate ignorance.

5

Moreover, there was also evidence presented that Ugha had actual knowledge of the fraud, since multiple accomplices testified that he either explicitly falsified information for loan verifications or allowed his business to be used for that purpose. Because the government only needed to proffer evidence that was sufficient to support a guilty verdict, there is ample evidence in the record to support actual knowledge. See Stone, 9 F.3d at 937. Thus, even if the district court erred in giving the jury a deliberate ignorance instruction -- and we do not believe that it did -- the error was harmless, and we affirm as to this issue.

We also find no merit to Ugha's claim that the district court plainly erred by denying his motion for a mistrial. A trial judge has discretion to grant a mistrial because he is in the best position to evaluate the prejudicial effect of a statement or evidence on a jury. Newsome, 475 F.3d at 1227. A mistrial should be granted if the defendant's substantial rights are prejudiced. Id. This occurs when, viewed in the context of the entire trial, there is a reasonable probability that, but for the improper remarks, the outcome of the trial would have been different. Id. When the record contains sufficient independent evidence of guilt, any error is harmless. Id.

Extrinsic evidence of specific instances of conduct are not admissible to attack or support a witness's character for truthfulness. Fed. R. Evid. 608(b). But specific instances of conduct may be asked about on cross-examination if they are probative

6

of the truthfulness of the witness or another witness whose character the questioned witness previously testified about. Id.

Character evidence is generally "not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Id. 404(a)(1). One exception is that, in a criminal case, the "defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Id. 404(a)(2)(A). When character or character trait evidence is admissible, on cross-examination of the character witness the court may allow inquiry into relevant specific instances of the person's conduct. Id. 405(a).

Here, Ugha failed to object when the government announced during the bench conference its intention to question the character witness on matters beyond the scope of a stipulation Ugha had agreed to concerning parts of a Georgia Real Estate Commission consent order providing that Ugha had falsified documents involved in a real estate transaction; Ugha then failed to object during the questioning of the character witness; and he only objected after the cross-examination of the witness ended, which was untimely. As a result, we review this issue for plain error.

On the record before us, we cannot say the district court plainly erred in denying the mistrial. For starters, the government's questioning of the character witness, Curt Cooper, a real estate agent who knew Ugha professionally for over 11 years, was proper. Rule 608, upon which Ugha primarily relies, concerns the

7

<u>witness</u>'s character for truthfulness.  However, the government was not attacking Cooper's character for truthfulness and, as Ugha has correctly noted, Ugha was not a witness for purposes of Rule 608.  Thus, Rule 608 is inapplicable to Cooper's testimony.  Rather, Rule 404(a)(2)(A) is invoked, because Ugha questioned Cooper about <u>Ugha</u>'s character for truthfulness, which put Ugha's character at issue and opened the door for the government to rebut that same character.  Because the door was opened through Cooper's testimony, the government could properly cross-examine him on the specific instances of conduct contained in the consent order, including Ugha's previous falsification of real estate transaction documents, and which went directly to Ugha's character for truthfulness on issues pertinent to the case.  <u>See</u> Fed. R. Evid. 405(a).

And in any event, under plain error review, we cannot say that Ugha's substantial rights were affected when this evidence was admitted.  Indeed, not only did the district court twice give the jury limiting instructions that it was only to consider the contents of the consent order as to Ugha's state of mind or intent, but, as we've detailed, other evidence in the record sufficiently indicated that Ugha had knowingly participated in the fraudulent scheme or that he was deliberately ignorant.  Thus, the district court did not err, much less plainly err in refusing to grant a mistrial.

**AFFIRMED**.